# No. 16-15927

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

EROTIC SERVICE PROVIDER LEGAL, EDUCATION & RESEARCH PROJECT; K.L.E.S.; C.V.; J.B.; and JOHN DOE
*Plaintiffs–Appellants*

v.

GEORGE GASCÓN, District Attorney of the City and County of San Francisco; EDWARD S. BERBERIAN, JR., District Attorney of the County of Marin; NANCY E. O'MALLEY, District Attorney of the County of Alameda; JILL RAVITCH, District Attorney of the County of Sonoma; and KAMALA D. HARRIS, Attorney General of the State of California
*Defendants–Appellees*

On Appeal from the United States District Court
for the Northern District of California
Honorable Jeffrey S. White, Case No.: C 15-01007 JSW

## REPLY BRIEF OF PLAINTIFFS–APPELLANTS
EROTIC SERVICE PROVIDER LEGAL, EDUCATION & RESEARCH PROJECT; K.L.E.S.; C.V.; J.B.; AND JOHN DOE

H. Louis Sirkin
Brian P. O'Connor
SANTEN & HUGHES, LPA
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
(513) 721-4450

D. Gill Sperlein
The Law Offices of D. Gill Sperlein
345 Grove Street
San Francisco, California 94102
(415) 494-6615

Attorneys for Plaintiffs–Appellants

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................ii-iii

ARGUMENT ..........................................................................................1

    1. The State misapprehends the liberty interest at stake .......1

    2. *Lawrence* did not decide the issue of whether State laws criminalizing prostitution are constitutional .......................4

    3. The State is incorrect to claim that rational basis review was the proper standard for reviewing Section 647(b) ........6

    4. Citizens do not forfeit the liberty guaranteed to them by the Due Process Clause if they transact commerce in the exercise of that liberty .......................................................7

    5. None of the posited state interests justify Section 647(b) ...9

CONCLUSION ...................................................................................11

CERTIFICATE OF COMPLIANCE ..................................................12

CERTIFICATE OF SERVICE ............................................................13

# TABLE OF AUTHORITIES

**Pages**

**Federal Cases**

*Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288 (1936) .............. 5

*Beverly Hills Suites LLC v. Town of Windsor Locks*,
136 F.Supp.3d 167 (D. Conn. 2015) .................................................. 4

*Carey v. Population Services Int'l*, 431 U.S. 678 (1971) ..................... 2

*DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014) ............................... 7

*Eisenstadt v. Baird*, 405 U.S. 438 (1971) .......................................... 2

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ................................... 2

*IDK, Inc. v. Clark County*, 836 F.2d 1185 (9th Cir. 1988) ................ 2,4

*Lawrence v. Texas*, 539 U.S. 558 (2003) .......................................... passim

*Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) ................................... 2,5,6

*Obergefell v. Wymslo*, 962 F.Supp.2d 968 (S.D. Ohio 2013) ............. 6

*Planned Parenthood of Sw. Penn. v. Casey*, 505 U.S. 833 (1992) ...... 2

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008) ..... 1

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................... 2

*Skinner v. Oklahoma*, 316 U.S. 535 (1942) ...................................... 2

*Solinger v. A&M Records, Inc.*, 586 F.2d 1304 (9th Cir. 1978) ......... 7

*United States v. Carter*, 266 F.3d 1089 (9th Cir. 2001) .................... 9

*Witt v. Dept. of Air Force*, 527 F.3d 806 (9th Cir. 2008) .................. 6,7

**Statutes**

Cal.Pen.Code § 236.1 ....................................................................... 10

Cal.Pen.Code § 261 .......................................................................... 10

Cal.Pen.Code § 647(b) ..................................................................... passim

**Other Authorities**

Dale Carpenter, Flagrant Conduct: The Story of
*Lawrence v. Texas* (2012) ................................................................3

Dale Carpenter, *The Unknown Past of* Lawrence v. Texas,
102 Mich. L. Rev. 1464 (2004) .........................................................3

George Carlin, Napalm & Silly Putty (1st ed. 2001) .....................8

Kenji Yoshino, *A New Birth of Freedom?:* Obergefell v. Hodges,
129 Harv. L. Rev. 147 (2015) ...........................................................3

## ARGUMENT

**1.   The State misapprehends the liberty interest at stake.**

Just as it did in the District Court below, the State here again misapprehends the fundamental liberty interest at issue in this case. (*See* E.R. 6-7). The liberty interest at stake is far greater than just "a fundamental right to engage in prostitution" as the State claims. (*See* Ans. Br. 14). Nor, despite the State's suggestion to the contrary, is this case just about the Constitution's protections of "highly personal relationships" with "deep attachments or commitments". (*But see* Ans. Br. 12–13). And this case is not at all about sex trafficking or children, although the State references those things in its Brief. (*See* Ans. Br. 6).

In truth, this case is about consenting adults. It is about the right of those consenting adults to be free from the government intruding into their private, sexual lives. The Supreme Court has referred to this liberty as the "substantial protection [given] to adult persons in deciding how to conduct their private lives in matters pertaining to sex." *Lawrence v. Texas*, 539 U.S. 558, 572 (2003). The Fifth Circuit described this fundamental liberty interest as "the individual's right to make private decisions about consensual intimate conduct." *Reliable*

1

*Consultants, Inc. v. Earle*, 517 F.3d 738, 746 (5th Cir. 2008). Regardless of how it is phrased, the core principle is the same: the State may not tell consenting adults how to conduct their private, sexual lives. *See, e.g., Skinner v. Oklahoma*, 316 U.S. 535 (1942); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Eisenstadt v. Baird*, 405 U.S. 438 (1971); *Carey v. Population Services Int'l*, 431 U.S. 678 (1971); *Roe v. Wade*, 410 U.S. 113 (1973); *Planned Parenthood of Sw. Penn. v. Casey*, 505 U.S. 833 (1992); *Lawrence*, 539 U.S. 558; *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015).

Disregarding this precedent, the State instead argues that *IDK, Inc. v. Clark County*, 836 F.2d 1185 (9th Cir. 1988), is controlling on the present case. (Ans. Br. 12; *see also* National Center on Sexual Exploitation Amicus Brief at 7). The *IDK* Court reasoned that the Fourteenth Amendment's freedom of association protected only "highly personal bonds" and relationships that developed "deep attachments or commitments." *Id.* at 1193. But *IDK* was decided before *Casey*, *Lawrence*, and *Obergefell*. Those three United States Supreme Court cases, decided after *IDK*, leave little doubt that the liberty protected by

2

the Due Process Clause extends well beyond deep and committed relationships.

For example, *Lawrence* shows that private, consensual sex is not and cannot be a criminal act, regardless of how meaningful or meaningless the relationship is. *See* Kenji Yoshino, *A New Birth of Freedom?:* Obergefell v. Hodges, 129 HARV. L. REV. 147, 161 (2015). The Supreme Court in *Lawrence* did not strike down Texas's law criminalizing same-sex intercourse because of the nature of the relationship between the petitioners in that case, John Geddes Lawrence and Tyron Garner. The record in *Lawrence* contained no evidence whatsoever that Messrs. Lawrence and Garner were in a relationship with "deep attachments or commitments." *See Lawrence*, 539 U.S. at 563 (noting that the petitioners had entered a plea of *nolo contendere* and, therefore, there had been no trial). Quite the contrary, "Lawrence and Garner were not in a long-term committed relationship." DALE CARPENTER, FLAGRANT CONDUCT: THE STORY OF *LAWRENCE V. TEXAS* 280 (2012); Dale Carpenter, *The Unknown Past of* Lawrence v. Texas, 102 MICH. L. REV. 1464, 1522–23 (2004). Messrs. Lawrence and

Garner were simply two men that a police officer claimed to have seen having anal sex. *Lawrence*, 539 U.S. at 563.

The Supreme Court held that Texas could not criminalize their private, sexual conduct because Messrs. Lawrence and Garner "were free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Id*. at 564. Nowhere did the *Lawrence* Court apply anything similar to the argument advanced by the State in this case that the Due Process Clause of the Fourteenth Amendment only protects relationships with "deep attachments or commitments."

As such, the State is simply incorrect when it claims that this Court's decision in *IDK* is controlling.[1] The liberty protected by the Due Process Clause is not limited to deeply committed relationships.

**2.** ***Lawrence* did not decide the issue of whether State laws criminalizing prostitution are constitutional.**

In its Brief, the State distorts the way in which the Court's opinion in *Lawrence* addressed the topic of prostitution. (*See* Ans. Br.

---

[1] Separately, the State cites to *Beverly Hills Suites LLC v. Town of Windsor Locks*, 136 F.Supp.3d 167 (D. Conn. 2015). In that case, however, the Court did not address a claim concerning the liberty protected by the Due Process Clause of the Fourteenth Amendment. As such, that district court opinion is not instructive on the present case.

4

16-17). It is true that the *Lawrence* Court wrote that the conduct at issue in *Lawrence* was not prostitution. *Lawrence*, 539 U.S. at 578. But, in that same vein, the *Lawrence* Court also expressly noted that the issue in *Lawrence* was not "whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Id.*

In making both of these statements, the *Lawrence* Court was exercising judicial minimalism and addressing the fact that those additional issues were not before the Court at that time. As Justice Brandeis explained many decades ago, "[t]he Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (internal citations omitted).

Thus, these sentences from *Lawrence* were not indicating how the Court would rule if such a case concerning prostitution or same-sex marriage were to confront the Court. These sentences did not mean that laws criminalizing prostitution or laws forbidding same-sex marriages could withstand constitutional muster. *See generally Obergefell*, 135 S. Ct. 2584. Rather, these sentences from *Lawrence*

5

were only the Court's acknowledgment that the Court did not need to address those issues at that point in time. They are thus only minimally relevant to the present case.

**3. The State is incorrect to claim that rational basis review was the proper standard for reviewing Section 647(b).**

In their Opening Brief, Appellants argued that the District Court erred by conducting only a rational basis review of Section 647(b). Under *Lawrence*, 539 U.S. 558, and *Witt v. Dept. of Air Force*, 527 F.3d 806 (9th Cir. 2008), the district court should have "applied something more than traditional rational basis review." *See Witt*, 527 F.3d at 817. The State responds that *Witt*'s "heightened scrutiny" should only apply in cases involving sexual orientation. (Ans. Br. 23). This argument is not well-taken.

As the *Witt* Court explained, "the *Lawrence* Court's rationale for its holding * * * is inconsistent with rational basis review." *Witt*, 527 F.3d at 817. *Lawrence* was about the liberty interest against unwarranted governmental "intrusion into the personal and private life of the individual." *See id.* (citing *Lawrence*, 539 U.S. at 578). This is precisely the same liberty interest at stake in the present case. And because this case addresses the very same guarantee of liberty as was

6

addressed in *Lawrence* and *Witt*, it should therefore be subject to the same level of review (i.e. something more than traditional rational basis review). *See also Obergefell v. Wymslo*, 962 F.Supp.2d 968, 978 (S.D. Ohio 2013) (noting that under *Witt* something more than rational basis review was required in a post-*Lawrence* substantive due process case concerning governmental intrusion into private lives), *rev'd*, *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *rev'd*, *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015).

4. **Citizens do not forfeit the liberty guaranteed to them by the Due Process Clause if they transact commerce in the exercise of that liberty.**

The State next argues that even if having sex free of unwarranted governmental intrusion did implicate a fundamental liberty interest, the State could still criminalize the commercial exchange of sex because "one can have * * * sexual relationships [] without engaging in prostitution." (Ans. Br. 24). As a preliminary matter, that is a factual assertion outside of the pleadings that cannot be considered upon a motion to dismiss. *See, e.g.*, *Solinger v. A&M Records, Inc.*, 586 F.2d 1304, 1308 (9th Cir. 1978).

7

But, more fundamentally, the State totally disregards the fact that when the liberty guaranteed by the United States Constitution protects a person from certain governmental intrusion, then that liberty also protects against the State completely outlawing transactions of commerce relating to that Constitutionally-protected behavior. This has been held true in a broad range of cases, spanning everything from the use of contraceptives to the right to keep and bear arms. (*See* Opening Brief 38-39)(collecting citations). Just as the government cannot say "it is legal for you to possess a firearm, but it is illegal for you to purchase any firearm," so too can the government not say "it is legal for you to engage in sexual activity, but it is illegal for you to pay for any sexual activity." Such a position defies logic. *See* GEORGE CARLIN, NAPALM & SILLY PUTTY 100 (1st ed. 2001) ("I don't understand why prostitution is illegal. Selling is legal, [sex] is legal. So, why isn't it legal to sell [sex]? Why should it be illegal to sell something that's legal to give away?"). And the State's Brief sheds no light on this obvious inconsistency.

Because the State cannot criminalize consensual, private sexual activity, it also cannot completely criminalize all transactions of commerce occurring in connection with that sexual activity.

**5. None of the posited state interests justify Section 647(b).**

The State dedicates the remainder of its Brief to arguing that there are rational bases for Section 647(b). First, as explained both in Appellants' Opening Brief and above, this is the improper level of scrutiny to apply to Section 647(b). Nevertheless, certain arguments offered by the State merit a reply.

The State cites to *United States v. Carter*, 266 F.3d 1089, 1091 (9th Cir. 2001) and argues that "[p]rostitution creates a climate conducive to violence against women." (Ans. Br. 28). However, *Carter* does not support this paternalistic and sexist[2] assertion. In *Carter*, the Court determined that sex trafficking a minor across state lines against the minor's will was a violent crime. Of course it is. But this has absolutely no bearing on whether adult Californians should be free to participate voluntarily in sexual activity and to pay or be paid in connection therewith. This is nothing more than another attempt by

---

[2] People of all gender identities work as and solicit erotic service providers.

9

the State to conflate voluntary prostitution with sex trafficking. (*See, e.g.*, Ans. Br. 28) ("Indeed, the distinction between a prostitute and a sex trafficking victim is blurred"); *accord* National Center on Sexual Exploitation Amicus Brief at 14.

The State's citation to *Carter* is emblematic of the State's arguments in general. Throughout its Brief, when it tries to conjure reasons to justify Section 647(b), the State offers arguments that either: (1) justify the criminalization of real crimes such as human trafficking; or (2) justify the criminalization of sex altogether.[3] But neither of these attacks actually justifies California's state law criminalizing prostitution.

If the State is concerned about protecting society against the harms of real crimes like sex trafficking and rape, then those concerns justify legislation directed at sex trafficking and rape. Indeed, the State already has significant legislation on those issues. *See, e.g.*, Cal.Pen.Code § 236.1; § 261. If the State is concerned that supposedly "risky sexual behaviors (e.g. sex without a condom, sex with multiple partners)" (*See* Ans. Br. 31) contribute to the spread of disease, then

---

[3] This pattern continues throughout the Amicus Brief of the National Center on Sexual Exploitation.

10

those concerns may justify the several public health initiatives already in place regarding those "risky sexual behaviors." But none of these posited governmental interests justify the outright prohibition on giving or receiving anything of value in connection with sexual activity that is itself perfectly legal.

## CONCLUSION

For all of the above reasons, this Court should reverse the judgment and the order granting the motion to dismiss, and should remand the case to the District Court for the entry of a declaration of unconstitutionality and a permanent injunction.

RESPECTFULLY SUBMITTED this 13th day of January, 2017.

>SANTEN & HUGHES, LPA
>H. LOUIS SIRKIN
>BRIAN P. O'CONNOR
>
>THE LAW OFFICES OF D. GILL SPERLEIN
>D. GILL SPERLEIN
>
>
>By: s/ H. Louis Sirkin
>    H. Louis Sirkin
>
>Attorneys for Plaintiffs–Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7) because it contains 2,131 words, excluding those parts exempted by FRAP 32(f), as determined by the word-counting feature of Microsoft Word.

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

s/ H. Louis Sirkin<br>
H. Louis Sirkin

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate cm/ECF system on January 13, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ H. Louis Sirkin<br>
H. Louis Sirkin

618733.5